1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   DAN G. BOYLE (Cal. Bar No. 332518)
4  Assistant United States Attorney
   Asset Forfeiture & Recovery Section
5       1400 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-2426
7       Facsimile: (213) 894-0141
        E-mail:    Daniel.Boyle2@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

```
                   FILED
          CLERK, U.S. DISTRICT COURT

            11/20/2023

        CENTRAL DISTRICT OF CALIFORNIA
        BY:        jb          DEPUTY
```

10                 UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No.2:23-cr-00568-DSF-2

13           Plaintiff,               PLEA AGREEMENT FOR
                                      DEFENDANT JOYRO INVESTMENT,
14           v.                       INC.

15  JOYRO INVESTMENT, INC.,

16           Defendant.

17

18      1.   This constitutes the plea agreement between Joyro

19  Investment, Inc. ("defendant") and the United States Attorney's

20  Office for the Central District of California (the "USAO") in the

21  above-captioned case.  This agreement is limited to the USAO and

22  cannot bind any other federal, state, local, or foreign prosecuting,

23  enforcement, administrative, or regulatory authorities.

24                   DEFENDANT'S OBLIGATIONS

25      2.   Defendant agrees to:

26           a.   Give up the right to indictment by a grand jury and,

27  at the earliest opportunity requested by the USAO and provided by the

28  Court, appear and plead guilty to Count One of an information in the

1    form attached to this agreement as Exhibit A, or a substantially

2    similar form, which charges defendant with Failure to Maintain an

3    Effective Anti-Money Laundering Program in violation of 31 U.S.C.

4    §§ 5318(h), 5322.

5           b.   Not contest facts agreed to in this agreement.

6           c.   Abide by all agreements regarding sentencing contained

7    in this agreement.

8           d.   Appear through its designated representative for all

9    court appearances and obey any other ongoing court order in this

10   matter.

11          e.   Not commit any crime; however, offenses that would be

12   excluded for sentencing purposes under United States Sentencing

13   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

14   within the scope of this agreement.

15          f.   Be truthful at all times with Pretrial Services, the

16   United States Probation Office, and the Court.

17          g.   Pay the applicable special assessment at or before the

18   time of sentencing.

19          h.   Cease business operations, unless defendant sells,

20   merges, or transfers all or substantially all of its business

21   operations, in which case, and whether such sale(s) is/are structured

22   as a sale, merger, or transfer, defendant shall:

23               i.   Fully disclose the executed plea agreement and

24   related Information to any purchaser(s).

25               ii.   Include in any contract for sale, merger, or

26   transfer the following provisions:

27                    (I)  Purchaser shall not contest, interfere with,

28   and/or comment upon in any judicial or administrative proceeding,

2

1  whether federal, state, or local, any of the terms, admitted facts,

2  or obligations of this plea agreement and/or related Information; and

3                    (II) Purchaser shall create, implement, and

4  maintain an effective anti-money laundering compliance program which,

5  at a minimum, meets all the minimum requirements of 31 C.F.R.

6  § 1022.210.

7                         THE USAO'S OBLIGATIONS

8      3.   The USAO agrees to:

9           a.   Not contest facts agreed to in this agreement.

10          b.   Abide by all agreements regarding sentencing contained

11  in this agreement.

12          c.   At the time of sentencing, provided that defendant

13  demonstrates an acceptance of responsibility for the offense up to

14  and including the time of sentencing, recommend a two-level reduction

15  in the applicable Sentencing Guidelines offense level, pursuant to

16  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

17  additional one-level reduction if available under that section.

18          d.   Except for criminal tax violations (including

19  conspiracy to commit such violations chargeable under 18 U.S.C.

20  § 371), not to further criminally prosecute defendant for any

21  additional violations known to the USAO at the time of the plea

22  arising out of defendant's conduct described in the agreed-to factual

23  basis set forth in paragraph 6 below or arising out of facts known to

24  the USAO at the time of the plea.  Defendant understands that the

25  USAO is free to criminally prosecute defendant for any other unlawful

26  past conduct or any unlawful conduct that occurs after the date of

27  this agreement.  Defendant agrees that at the time of sentencing the

28  Court may consider the uncharged conduct in determining the

applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, failure to maintain an effective anti-money laundering program, in violation of 31 U.S.C. §§ 5318(h)(1) and 5322(b), the following must be true:

a.   Defendant was domestic financial institutions, as defined in 31 U.S.C. § 5312(a)(2);

b.   Defendant failed to implement one or more of the following minimal requirements set forth by statute and regulation by the Secretary of the Treasury:

i.   Establishing a system of effective written policies, procedures, and internal controls for one or more of the following:

(I)   verifying customer identification;

(II)   determining the occurrence of any transactions or patterns of transactions required to be reported in a Currency Transaction Report ("CTR") or Suspicious Activity Report ("SAR"); or

(III)   creating and retaining CTR and/or SAR records; or

(IV)   responding to law enforcement requests;

ii.   Designating an individual or individuals to assure day-to-day compliance;

1           iii. Establishing training of appropriate personnel

2  concerning their responsibilities under the program; or

3           iv.  Establishing internal and/or external independent

4  audit function to test compliance.

5     c.  Defendant acted willfully in failing to develop,

6  implement, and maintain an effective anti-money laundering program,

7  and acted with knowledge that such failures were unlawful.

8  PENALTIES

9    5.  Defendant understands that the statutory maximum sentence

10  that the Court can impose for a violation of 31 U.S.C. §§ 5318(h),

11  5322(a) is: ten years' probation; a fine of $500,000; and a mandatory

12  special assessment of $400 under 18 U.S.C. § 3013(a)(2)(B).

13  FACTUAL BASIS

14    6.  Defendant admits that defendant is, in fact, guilty of the

15  offenses to which defendant is agreeing to plead guilty.  Defendant

16  and the USAO agree to the statement of facts provided below and agree

17  that this statement of facts is sufficient to support pleas of guilty

18  to the charges described in this agreement and to establish the

19  Sentencing Guidelines factors set forth in paragraph 8 below but is

20  not meant to be a complete recitation of all facts relevant to the

21  underlying criminal conduct or all facts known to either party that

22  relate to that conduct.

23    Throughout the relevant time period, defendant was domestic

24  financial institution, as defined in 31 U.S.C. § 5312(a)(2).

25    Defendant, through its managers and agents, was aware that the

26  Bank Secrecy Act ("BSA") required financial institutions such as

27  itself to file CTRs with the Department of Treasury, including for

28  any transaction involving more than $10,000 in currency on a single

5

day. For the purposes of filing a CTR, defendant knew that the BSA required defendant to aggregate multiple currency transactions and treat them as a single transaction if the multiple transactions were conducted by or on behalf of one person in one 24-hour period.

Beginning on an unknown date, and continuing through in or around July of 2019, defendant's managers and agents would cash checks in aggregate over $10,000 for clients and give them more than $10,000 the same day, without filing any CTRs. Defendant's managers and agents would do so by depositing one check into Bank of Hope and one check into Hanmi Bank, both under $10,000. Defendant's managers and agents split these checks between the two accounts but would not file CTRs for these transactions. By submitting two checks, each in different accounts and under different names, defendant avoided filing CTRs. Defendant, through its managers and agents, would also accept multiple checks and deposit them in a single day, but defendant's managers and agents would only give clients up to $10,000 per day and tell them to return another day to get the other $10,000, therefore defendant avoided filing CTRs.

Defendant was also aware that the BSA required financial institutions such as itself to file a SAR with the Department of Treasury for a transaction conducted or attempted involving at least $5,000 in funds or other assets, where the financial institution knew, suspected, or has reason to suspect that the transaction (or a pattern of transactions of which the transaction was a part): (1) involves funds derived from illegal activity or was intended or conducted in order to hide or disguise funds or assets derived from illegal activity as a part of a plan to violate or evade any federal law or regulation or to avoid any transaction reporting requirement

under federal law or regulation; (2) was designed, whether through structuring or other means, to evade any requirements of this part or of any other regulations promulgated under the BSA; (3) had no business or apparent lawful purpose or was not the sort in which the particular customer would normally be expected to engage, and the financial institution knew of no reasonable explanation for the transaction after examining the available facts; or (4) involved the use of the financial institution to facilitate criminal activity.

Defendant, through its managers and agents, maintained a separate account which was used to cash checks from insurance companies and attorney client trust accounts. Defendant's managers and agents believed these checks from insurance companies and attorneys' client trust accounts, which aggregated to more than $5,000, were the proceeds of insurance fraud. "Runners" would bring in checks, but they were not the payees whose names were on the checks. The checks were endorsed before they were brought in, and defendant's managers and agents did not know if the payees were actually signing the checks. Defendant's managers and agents believed the checks were from an insurance fraud scheme based on conversations overheard from runners discussing the fraud.

Finally, defendant was aware that the BSA required defendant to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent its services from being used to facilitate money laundering, by, among other elements, having effective written policies and procedures for verifying customer identification, determining whether CTRs and SARs needed to be filed, and having internal controls and independent testing to assure compliance.  Although defendant had some written policies and

procedures regarding some, but not all, of the items required by the BSA, defendant failed to implement and maintain key portions of the written programs, such as procedures related to internal controls and independent testing.

Defendant acted willfully in failing to develop, implement, and maintain an effective anti-money laundering program, and acted with knowledge that such failures were unlawful.

SENTENCING FACTORS

7.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

TOTAL OFFENSE LEVEL

8.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 8 | USSG § 2S1.3(a)(1) |
| Value of Funds: | +2 | USSG § 2S1.3(b)(1) |
| Violations of BSA >$100K in 12 months: | +2 | USSG § 2S1.3(b)(2) |
| Acceptance of Responsibility (if applicable at sentencing): | -2 | USSG § 3E1.1 |

Total Offense Level:              10

9.    Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

10.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

11.   Defendant and the USAO agree that, pursuant to USSG § 8C2.5(g)(2), defendant fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct. Defendant and the USAO agree to jointly propose a fine of $21,000, reflecting the low end of the applicable fine guidelines range pursuant to USSG § 8C2.6, and the USAO agrees not to argue for a lower or greater fine amount.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

12.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.    The right to persist in a plea of not guilty.

      b.    The right to a speedy and public trial by jury.

      c.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      d.    The right to confront and cross-examine witnesses against defendant.

      e.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

f.   Any and all rights to pursue any affirmative defenses, Fourth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

13.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

14.  Defendant agrees that, provided the Court imposes sentence corresponding to an offense level of 10 and the criminal history category calculated by the Court, defendant gives up the right to appeal any portion of the sentence.

15.  The USAO agrees that, provided the Court imposes sentence corresponding to an offense level of 10 and the criminal history category calculated by the Court, the USAO gives up the right to appeal any portion of the sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

16.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between

1   the date of defendant's signing of this agreement and the filing

2   commencing any such action; and (ii) defendant waives and gives up

3   all defenses based on the statute of limitations, any claim of pre-

4   indictment delay, or any speedy trial claim with respect to any such

5   action, except to the extent that such defenses existed as of the

6   date of defendant's signing this agreement.

7                  RESULT OF VACATUR, REVERSAL OR SET-ASIDE

8       17.  Defendant agrees that if defendant's conviction is vacated,

9   reversed, or set aside, the USAO may: (a) ask the Court to resentence

10  defendant on any remaining count of conviction, with both the USAO

11  and defendant being released from any stipulations regarding

12  sentencing contained in this agreement, (b) ask the Court to void the

13  entire plea agreement and vacate defendant's guilty plea on any

14  remaining count of conviction, with both the USAO and defendant being

15  released from all their obligations under this agreement, or

16  (c) leave defendant's remaining conviction, sentence, and plea

17  agreement intact.  Defendant agrees that the choice among these three

18  options rests in the exclusive discretion of the USAO.

19                       EFFECTIVE DATE OF AGREEMENT

20      18.  This agreement is effective upon signature and execution of

21  all required certifications by defendant's designated representative,

22  defendant's counsel, and an Assistant United States Attorney.

23                          BREACH OF AGREEMENT

24      19.  Defendant agrees that if defendant, at any time after the

25  signature of this agreement and execution of all required

26  certifications by defendant's designated representative, defendant's

27  counsel, and an Assistant United States Attorney, knowingly violates

28  or fails to perform any of defendant's obligations under this

11

agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

20. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under

the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND PROBATION OFFICE NOT PARTIES

21. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

22. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 8 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement. This paragraph also does not affect defendant's and the USAO's obligations contained in paragraphs 2-3 of this Agreement.

23.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

24.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

1

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        25.  The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5

6    AGREED AND ACCEPTED

7    UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF

8    CALIFORNIA

9    E. MARTIN ESTRDA
    United States Attorney

10

11    _Dan Boyle_            9.8.2023
    DAN G. BOYLE              Date

12    Assistant United States Attorney

13                             7/10/2023
    BON KOO                  Date

14    Authorized Agent of
    Defendant JOYRO INVESTMENTS, INC.

15

16                             9.12.2023

17    SIMON LEEN             Date
    Attorney for Defendant

18    JOYRO INVESTMENTS, INC.

19    //

20    //

21    //

22

23

24

25

26

27

28

CERTIFICATION OF DEFENDANT

I am the authorized agent for Joyro Investments, Inc. ("Joyro"), and I have authority to sign and bind Joyro.  On behalf of Joyro, I certify the following:

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and have carefully and thoroughly discussed every part of it with Joyro's attorney.  I understand the terms of this agreement, and Joyro voluntarily agrees to those terms.  I have discussed the evidence with counsel for Joyro, and counsel for Joyro has advised me of Joyro's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to Joyro, other than those contained in this agreement.  No one has threatened or forced Joyro in any way to enter into this agreement.  I am satisfied with the representation of counsel in this matter, and Joyro is pleading guilty because it is guilty of the charges and wishes to take advantage of the promises set forth in this agreement, and not for any other reason.

I certify that I am the designated representative of Joyro for purposes of all court appearances relating to this agreement.

_____          7/10/2023
BON KOO                                      Date
Authorized Agent of
Defendant JOYRO INVESTMENTS, INC.
//

16

1

2                    <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

3        I am JOYRO INVESTMENT, INC.'s attorney.  I have carefully and

4   thoroughly discussed every part of this agreement with my client.

5   Further, I have fully advised my client of its rights, of possible

6   pretrial motions that might be filed, of possible defenses that might

7   be asserted either prior to or at trial, of the sentencing factors

8   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

9   provisions, and of the consequences of entering into this agreement.

10  To my knowledge: no promises, inducements, or representations of any

11  kind have been made to my client other than those contained in this

12  agreement; no one has threatened or forced my client in any way to

13  enter into this agreement; my client's decision to enter into this

14  agreement is an informed and voluntary one; and the factual basis set

15  forth in this agreement is sufficient to support my client's entry of

16  a guilty plea pursuant to this agreement.

17  _____        9/12/2023
                                            _____
18  SIMON LEEN                              Date
    Attorney for Defendant
19  JOYRO INVESTMENT, INC.

20

21

22

23

24

25

26

27

28

# **EXHIBIT A**

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>BON KOO and<br>JOYRO INVESTMENT, INC.,<br><br>            Defendants. | CR No.<br><br>I N F O R M A T I O N<br><br>[31 U.S.C. §§ 5318(h)(1), 5322(a):<br>Failure to Maintain an Effective<br>Anti-Money Laundering Program] |

16

17      The United States Attorney charges:

18                         COUNT ONE

19             [31 U.S.C. §§ 5318(h)(1), 5322(a)]

20              [Defendant JOYRO INVESTMENT INC.]

21      From an unknown date to on or about July 31, 2019, in Los

22  Angeles County, within the Central District of California and

23  elsewhere, defendant JOYRO INVESTMENT INC. ("JOYRO") willfully failed

24  to develop, implement, and maintain an effective anti-money

25  laundering program for financial institutions and a money services

26  business (as these terms are defined in the Bank Secrecy Act and in

27  regulations issued thereunder), including, at a minimum: (a) the

28  development of internal policies, procedures, and controls; (b) the

designation of a compliance officer; (c) an ongoing employee training program; and (d) an independent audit function to test programs, as required by the Secretary of the Treasury. Specifically, defendant JOYRO willfully failed to: (1) enact adequate policies, procedures, and controls to ensure that defendant JOYRO obtained adequate information about its customers and adequately reported suspicious financial transactions in accordance with the Bank Secrecy Act; (2) sufficiently train defendant JOYRO's employees to monitor for suspicious activity and comply with the Bank Secrecy Act; and (3) implement suggestions from independent examinations for compliance, which caused defendant JOYRO to fail to have sufficient procedures to protect against money laundering.

1

                              COUNT TWO

2

            [31 U.S.C. §§ 5318(h)(1), 5322(a); 18 U.S.C. § 2(a)]

3

                        [Defendant BON KOO]

4

       From an unknown date to on or about July 31, 2019, in Los

5

Angeles County, within the Central District of California, and

6

elsewhere, defendant BON KOO aided, abetted, counseled, commanded,

7

induced, and procured Joyro Investment Inc. in the willful failure to

8

develop, implement, and maintain an effective anti-money laundering

9

program for financial institutions and a money services business (as

10

these terms are defined in the Bank Secrecy Act and in regulations

11

issued thereunder), including, at a minimum: (a) the development of

12

internal policies, procedures, and controls; (b) the designation of a

13

compliance officer; (c) an ongoing employee training program; and (d)

14

an independent audit function to test programs, as required by the

15

Secretary of the Treasury.

16

17

18

                              E. MARTIN ESTRADA
                              United States Attorney

19

20

21

                              MACK E. JENKINS
                              Assistant United States Attorney
                              Chief, Criminal Division

22

23

                              JONATHAN GALATZAN
                              Assistant United States Attorney
                              Chief, Asset Forfeiture &
                              Recovery Section

24

25

                              DAN G. BOYLE
                              Assistant United States Attorney
                              Asset Forfeiture & Recovery
                              Section

26

27

28

                                 3

## CERTIFICATE OF SERVICE

I, **Catherine Wilkinson**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**Plea Agreement**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☒ Via email, as follows:

☐ By Federal Express, as follows:

**sleen@bsfllp.com**

This Certificate is executed on **November 20, 2023**, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

*Catherine Wilkinson*
Catherine Wilkinson
Legal Assistant